UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| Common Cause Florida, FairDistricts Now, Dorothy Inman-Johnson, Brenda Holt, Leo R. Stoney, Myrna Young, and Nancy Ratzan,<br><br>                 *Plaintiffs,*<br><br>    v.<br><br>Laurel M. Lee, in her official capacity as Florida Secretary of State, Wilton Simpson, in his official capacity as the President of the Florida State Senate, Chris Sprowls, in his official capacity as the Speaker of the Florida House of Representatives, Ray Wesley Rodrigues, in his official capacity as the Chair of the Florida Senate Reapportionment Committee, Jennifer Bradley, in her official capacity as the Chair of the Florida Senate Select Subcommittee on Congressional Reapportionment, Thomas J. Leek, in his official capacity as the Chair of the Florida House of Representatives Redistricting Committee, and Tyler I. Sirois, in his capacity as the Chair of the Florida House of Representatives Congressional Redistricting Subcommittee, Ron DeSantis, in his official capacity as Governor of Florida,<br><br>                 *Defendants*. | Case No.: |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Common Cause Florida ("Common Cause"), FairDistricts

Now, and Dorothy Inman-Johnson, Brenda Holt, Leo R. Stoney, Myrna Young, and

Nancy Ratzan (the "Individual Plaintiffs," and together with Common Cause and

FairDistricts Now, "Plaintiffs"), by and through their undersigned counsel, file this Complaint for Declaratory and Injunctive Relief against Defendants Laurel M. Lee, in her official capacity as Florida Secretary of State, Wilton Simpson, in his official capacity as the President of the Florida State Senate, Chris Sprowls, in his official capacity as the Speaker of the Florida House of Representatives, Ray Wesley Rodrigues, in his official capacity as the Chair of the Florida Senate Reapportionment Committee, Jennifer Bradley, in her official capacity as the Chair of the Florida Senate Select Subcommittee on Congressional Reapportionment, Thomas J. Leek, in his official capacity as the Chair of the Florida House of Representatives Redistricting Committee, Tyler I. Sirois, in his capacity as the Chair of the Florida House of Representatives Congressional Redistricting Subcommittee, and Ron DeSantis, in his official capacity as Governor of Florida, and hereby state and allege as follows:

## INTRODUCTION

1.     This is an action challenging Florida's current congressional districts, which were rendered unconstitutionally malapportioned by a decade of population shifts and which violate Article I, Section 2 of the U.S. Constitution and 2 U.S.C. § 2c.

2.     On April 26, 2021, the U.S. Secretary of Commerce delivered the apportionment data obtained by the 2020 Census to the President. Those data make

clear that Florida's congressional districts do not account for the current population numbers in Florida, in violation of federal law. *See Arrington v. Elections Board*, 173 F. Supp. 2d 856, 860 (E.D. Wisc. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data") (internal quotation marks omitted). The 2020 Census data also confirmed that Florida, the third-largest State with a population of 21.5 million, [1] will be allocated 28 Members in the next Congress, one more than currently allocated.

3.      After the 2020 Census data was published, the Florida Legislature was tasked with drawing a new congressional map that would comply with constitutional and statutory standards. The Legislature began the process in January 2022. But Governor DeSantis then abruptly intervened, overstepping his Executive powers to propose his own, constitutionally noncompliant map, which veered the Legislature off its course and cast the congressional redistricting process into uncertainty. The Governor has repeatedly and inappropriately inserted himself into the congressional redistricting process, and with each intervention, the Legislature's proposed maps have deviated further and further from the required constitutional standards.

---

[1] *See* "FLORIDA: 2020 Census." United States Census Bureau, Aug. 25, 2021, https://www.census.gov/library/stories/state-by-state/florida-population-change-between-census-decade.html.

Although the Legislature has proposed subsequent congressional maps in response to Governor DeSantis's pressures, the Governor has nevertheless made it clear that he will veto virtually any map that protects the voting rights of minorities and avoids partisan gerrymandering.  As a result, there is a significant likelihood that Florida's political branches will fail to reach consensus to enact a lawful congressional district plan in time to be used in the upcoming 2022 elections.

4.     Due to population changes over the past decade, Florida's current congressional districts are both unlawful and unconstitutional.  Specifically, the current configuration of Florida's congressional districts violates Article I, Section 2 of the U.S. Constitution's requirement that states must "achieve population equality 'as nearly as is practicable'" when drawing congressional districts.  *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964)); *see also Reynolds v. Sims*, 377 U.S. 533 (1964).  The current congressional map also violates 2 U.S.C. § 2c's requirement that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled."  The Individual Plaintiffs and Common Cause members throughout Florida will be forced to cast unequal votes if the current congressional map is not brought into compliance with constitutional and statutory requirements.  The current congressional plan therefore cannot be used in any upcoming elections, including the 2022 elections.

5.     Because Florida's political branches will likely fail to enact a new congressional district plan, this Court should intervene to protect the constitutional rights of the Individual Plaintiffs, Common Cause members, and voters across this state.  Plaintiffs ask this Court to declare Florida's current congressional district plan unconstitutional and unlawful, enjoin Defendants from using the current plan in any future election, and implement a new congressional district plan that adheres to the constitutional requirement of one-person, one-vote and which contains 28 congressional districts, as required by 2 U.S.C. § 2c.

## PARTIES

6.     Plaintiff Common Cause Florida is a nonpartisan, nonprofit grassroots organization dedicated to upholding the core values of American democracy, with members and supporters throughout Florida, including in Florida's current Congressional Districts 5 and 10.  Common Cause works to create open, honest, and accountable government that serves the public interest and to empower all people in Florida to make their voices heard in the political process.  Since it was founded, Common Cause has been dedicated to fair elections, protecting the rights of voters, and making government at all levels more representative, open, and responsive to the interests of ordinary people.  Those values will be jeopardized if the current congressional map is used for any upcoming election.

7.     Plaintiff FairDistricts Now is a nonpartisan, nonprofit organization that

works to ensure that Florida's 2022 districts are drawn according to the law—to benefit the people of Florida.  FairDistricts Now's mission is to educate the public about the importance of fairness and transparency in redistricting.  The values that FairDistricts Now advocates for will be jeopardized if the current congressional map is used for any upcoming election.

8.     The Individual Plaintiffs are citizens of the United States and are registered to vote in Florida.  The Individual Plaintiffs reside in the following congressional districts:

| Plaintiff's Name | County of Residence | Congressional District |
|---|---|---|
| Dorothy Inman-Johnson | Leon | 2 |
| Brenda Holt | Gadsden | 5 |
| Leo R. Stoney | Orange | 10 |
| Myrna Young | Lee | 19 |
| Nancy Ratzan | Miami-Dade | 27 |

9.     Based on the recent Census Bureau data and the fact that Florida has been allocated a 28th seat in the U.S. House of Representatives, none of the current congressional districts is lawful.  Some districts are now significantly overpopulated, while others are significantly underpopulated.  Based on the recent Census data, the Individual Plaintiff who resides in current Congressional District 5 resides in a

district that is significantly underpopulated relative to other districts in the state. The Individual Plaintiff who resides in current Congressional District 10 resides in a district that is significantly overpopulated relative to other districts in the state. If the 2022 elections are held under the map currently in place, then the Individual Plaintiffs will be deprived of their right to cast an equal vote, as guaranteed to them by the U.S. Constitution.

10. Defendant Laurel M. Lee is the Florida Secretary of State and is named as a Defendant in her official capacity. She is the "chief election officer of the state," and as such, is responsible for the administration and implementation of election laws in Florida. *See* Fla. Stat. § 97.012(1).

11. Defendant Wilton Simpson is the President of the Florida State Senate and is named as a Defendant in his official capacity.

12. Defendant Chris Sprowls is the Speaker of the Florida House of Representatives and is named as a Defendant in his official capacity.

13. Defendant Ray Wesley Rodrigues is the Chair of the Florida Senate Reapportionment Committee and is named as a Defendant in his official capacity.

14. Defendant Jennifer Bradley is the Chair of the Florida Senate Select Subcommittee on Congressional Reapportionment and is named as a Defendant in her official capacity.

15. Defendant Thomas J. Leek is the Chair of the Florida House of

Representatives Redistricting Committee and is named as a Defendant in his official capacity.

16.     Defendant Tyler I. Sirois is the Chair of the Florida House of Representatives Congressional Redistricting Subcommittee and is named as a Defendant in his official capacity.

17.     Defendant Ron DeSantis is the Governor of Florida and is named in his official capacity.

## JURISDICTION AND VENUE

18.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1343, 2201, and 2022, as well as 42 U.S.C. § 1983.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

20.     A three-judge panel of this district court has jurisdiction to adjudicate, and must adjudicate, this lawsuit because Plaintiffs are challenging the constitutionality of the apportionment of Florida's congressional districts.  28 U.S.C. § 2284(a); *Shapiro v. McManus*, 577 U.S. 39 (2015).

## FACTUAL ALLEGATIONS

I.     **Florida's current congressional districts were drawn using 2010 Census data.**

21.     Florida's current congressional district map was ultimately implemented in 2015, using 2010 Census data.

22.     According to the 2010 Census, Florida had a population of 18,801,310.

Based on that data, the ideal population for each of Florida's congressional districts (i.e., the state's total population divided by the number of districts) in 2010 was 696,345 persons.

23.    The 2015 congressional plan had a maximum deviation (i.e., the difference between the ideal population of a district and the actual population of a district) of one person.

24.    The congressional district map that Florida's Legislature first passed on February 9, 2012 was struck down on July 10, 2014.  *Romo v. Detzner*, 2014 WL 3797315 (Fla. Cir. Ct. July 10, 2014).  The remedial map that the Legislature passed on August 11, 2014 was subsequently invalidated by the Florida Supreme Court on July 9, 2015.  *League of Women Voters of Florida v. Detzner*, 172 So. 3d 363 (Fla. 2015).  After the Legislature failed to agree on a remedial map, on December 2, 2015, the Florida Supreme Court approved a remedial map ordered by the Court. *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015).

25.    Accordingly, the Court-ordered map was affirmed by the Florida Supreme Court on December 2, 2015.  *Id*.

26.    That plan has been used in every Florida congressional election since 2016.

II.    **The 2020 Census is complete.**

27.    In 2020, the U.S. Census Bureau conducted the decennial census

required by Article I, Section 2 of the U.S. Constitution.

28.    On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President, and on August 12, 2021, the U.S. Secretary of Commerce published census-block results of the 2020 Census for the state of Florida.

29.    The results of the 2020 Census report that Florida's resident population is 21,538,187.  This is an increase from a decade ago, when the 2010 Census reported a population of 18,801,310.  In particular, Miami-Dade, Broward, Palm Beach, Hillsborough, Orange, and Duval counties received the most population growth across the state, including rapid growth in Hispanic, Black, and Asian-American populations.

30.    Because of Florida's population growth over the last decade, Florida has gained an additional congressional district.  Accordingly, Florida has been apportioned 28 congressional seats for the next Congress, one more than the 27 seats it was apportioned following the 2010 Census.  Beginning with the upcoming 2022 election, Florida voters will elect 28 members to the U.S. House of Representatives.

31.    According to the 2020 Census results, the ideal population for each of Florida's congressional districts under a 28-seat allocation is 769,221, approximately 72,876 more persons per district than under the 2010 Census allocation.

**III.    Florida's political branches will likely fail to enact a lawful
congressional district map in time for the next election.**

32.    In Florida, congressional district plans are enacted via legislation,
which must pass both chambers of the Legislature and be signed by the Governor
(unless the Legislature overrides the Governor's veto by a two-thirds vote in both
chambers).

33.    The rules for congressional redistricting in Florida are set forth in
Article III, Section 20 of the Florida State Constitution, as well as in federal law.
Section 20(a) prohibits political gerrymandering and drawing districts with "the
intent or result of denying or abridging the equal opportunity of racial or language
minorities to participate in the political process or to diminish their ability to elect
representatives of their choice; and districts shall consist of contiguous territory."

34.    The Legislature has shown that it largely has the capacity to comply
with state and federal law.  For instance, in February 2022, the Legislature passed
state legislative maps for the Florida House and Senate, both of which reasonably
complied with the law and, for the first time in state history, drew no objections from
third parties when they were reviewed by the Florida Supreme Court.

35.    In Florida, the legislative redistricting plans do not require the approval
of the Governor.  In contrast, the congressional map does require the Governor's
signature.  Unlike the Legislature, Governor DeSantis has demonstrated that he is
not willing to abide by the law, or sign a congressional plan that does, making an

impasse highly likely.  To date, the Legislature and Governor DeSantis have not reached agreement on a congressional district plan.

36.    In January 2022, the Florida Senate passed a new congressional redistricting plan (S035C8060.)[2]  This map was substantially compliant with the law and largely successful in protecting minority voting rights, and did not appear on its face to be a partisan gerrymander.

37.    On January 16, 2022, Governor DeSantis proposed his own congressional redistricting map, which largely ignored the law.  (P000C0079.)[3] Governor DeSantis's map eliminated Congressional District 5 and redrew Congressional District 10 so that Black voters had no chance of electing a representative of their choice.  In addition to eliminating two performing Black districts, Governor DeSantis's map also weakened one Hispanic district—all contributing to Republican dominance.  The Governor's map appears to have been drawn with the intent to favor Republicans: it included 19 districts that favor Republican candidates, and only 9 districts that favor Democratic candidates (based on 2020 election data).  In contrast, the map passed by the Senate prior to Governor

---

[2] *See* https://redistricting.maps.arcgis.com/apps/View/index.html?appid=b2a84a6530a84caa80f8fba2a10332f5.

[3] *See* https://redistricting.maps.arcgis.com/apps/View/index.html?appid=675244fabc9646fca158adca4a487db8.

DeSantis's insertion into the process included 16 districts that favor Republican candidates and 12 districts that favor Democratic candidates.  By inserting himself into the map-drawing process in this inappropriate and unprecedented way, Governor DeSantis began to diminish the prospect that the Legislature would timely pass a legally- and constitutionally-compliant congressional map.

38.     As part of his effort to interfere with and subvert the Legislature's congressional redistricting process, on February 1, 2022, Governor DeSantis requested an advisory opinion from the Florida Supreme Court to determine whether he should veto a hypothetical congressional redistricting bill that retained a version of what is currently Congressional District 5.  Common Cause and FairDistricts Now opposed this request as outside the Supreme Court's proper advisory opinion jurisdiction.  Nonetheless, the Governor's request had a chilling effect on the Florida House's efforts to draw a legally-compliant congressional map, leading the House to postpone its efforts.  The Florida Supreme Court ultimately denied Governor DeSantis's request on February 10, 2022.  *See Advisory Opinion to Governor re: Whether Article III, Section 20(a) of the Florida Constitution Requires the Retention of a District in Northern Florida*, 2022 WL 405381 (Fla. 2022) (per curiam).

39.     On February 14, 2022, Governor DeSantis submitted another proposed

congressional map with significant changes from his prior map.  (P000C0094.)[4]  His new map largely preserved the racial gerrymander from his first map, while achieving an even more extreme political gerrymander, underscoring his apparent intent to violate the law in order to favor Republicans: the new map now included 20 districts that favor Republican candidates, and only 8 districts that favor Democratic candidates (based on 2020 election data).

40.    On February 18, 2022, the Congressional Redistricting Committee of the Florida House filed CS/HB 7503, which was subsequently approved by the House Redistricting Committee on February 25, 2022, and referred to the House Calendar on February 27, 2022.  CS/HB 7503 provided that a new congressional districting map was intended to be the primary map (H000C8017),[5] and a second would be enacted if the primary map was found to be invalid by any court (H000C8015).[6]

41.    The version of the bill with H000C8017 was never voted on by the full House.  Before the House could vote on this bill, on March 1, 2022, the House

---

[4] *See* https://redistricting.maps.arcgis.com/apps/View/index.html?appid=8d3ed79b33ee400b9260ac63d73d8a2a.

[5] *See* https://redistricting.maps.arcgis.com/apps/View/index.html?appid=950f1b207abc49918b9869346fb8c5c1.

[6] *See* https://redistricting.maps.arcgis.com/apps/View/index.html?appid=ee5392af3f77462cb0f0faade5c3b9fb.

Redistricting Committee submitted a revised congressional districting map (H000C8019)[7] that replaced H0008017.   The revised CS/HB 7503—with H000C8019 as the primary map, and H000C8015 as a secondary map—was referred to the House for a vote on March 4, 2022.

42.    On the morning of March 4, 2022, as the bill was being debated on the House floor, Governor DeSantis publicly stated on Twitter that he "will veto the congressional reapportionment plan currently being debated by the House. DOA."[8] That same day, referring to H000C8019 and H000C8015, Governor DeSantis stated that he will "veto maps that include some of these unconstitutional districts.  And that is a guarantee.  They can take that to the bank."[9]  Governor DeSantis has made repeated similar public statements leaving no doubt that he will veto the congressional redistricting legislation passed by the Senate and House, specifically stating that he would veto any congressional redistricting bill that, in his view, contains what he considers to be an "unconstitutional gerrymander."

43.    On March 4, 2022, after Governor DeSantis's public statement that he

_____

[7] *See* https://redistricting.maps.arcgis.com/apps/View/index.html?appid=d42713944155 4f6b89087dd5bee4f799.

[8] *See* https://twitter.com/GovRonDeSantis/status/1499769316618772486?s=20&t=IPxT Z5OyiSTSAzJXvzcUfw.

[9] *See* https://www.cltampa.com/news/take-that-to-the-bank-desantis-threatens-to-veto-florida-congressional-map-12880330.

would veto the bill, the Florida House nonetheless passed the amended bill with H000C8019 as the primary map, and H000C8015 as a secondary map to be enacted if the primary map was found to be invalid by any court.

44.    Later that same day, the Florida Senate passed CS/SB 102, which adopted the House legislation establishing H000C8019 as the primary congressional map, and H000C8015 as the fallback if the primary map were invalidated.

45.    The maps drawn by the Legislature after Governor DeSantis inserted himself into the process and submitted his proposed congressional maps appear to be an attempt to assuage the Governor's concerns.  Accordingly, they retain the influence of the Governor's proposed maps and disregard for state and federal law.

46.    The Legislature's Regular Session was scheduled to conclude on March 11, 2022, but has been extended until at least Monday, March 14, 2022.  As of this filing, the congressional redistricting legislation approved by both chambers of the Legislature—implementing the H000C8019 map, with H000C8015 as a fallback— has not yet been presented to the Governor for his signature or, as the Governor has promised, his veto.  There is also significant uncertainty regarding whether, once Governor DeSantis vetoes the congressional map proposed by the Legislature, a special session will be convened to respond to the veto.  And, the legislative supporters of this plan do not have enough votes to override a veto.  As a result, Florida will be left without a congressional districting plan to remedy its

malapportioned districts.

47.     Given the circumstances, it is a near-certainty that there will be an impasse requiring judicial intervention.  It is highly likely that the Legislature and the Governor will fail to pass a lawful congressional redistricting plan in time to prepare for and be used during the upcoming 2022 congressional election, leaving the existing plan in place for next year's election and denying Florida voters' fundamental right to vote in equally proportioned districts.

IV.   **As a result of significant population shifts in the past decade, Florida's congressional districts are unconstitutionally malapportioned.**

48.     In the past decade, Florida's population has shifted significantly. Because the 2020 Census has now been completed, the 2010 population data used to draw Florida's congressional districts are obsolete, and any prior justifications for the existing map's deviations from population equality are no longer applicable.

49.     On September 16, 2021, the U.S. Secretary of Commerce delivered to Florida's Governor and legislative leaders detailed population data to Florida, which the State may use to tabulate the new population of each subdivision.  These data are commonly referred to as "P.L. 94-171 data," a reference to the legislation enacting this process.  *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

50.     Recent Census Bureau data make clear that significant population shifts have occurred in Florida since 2010, skewing the current congressional districts far from population equality.

17

51.     In particular, recent Census Bureau data demonstrate that population shifts since 2010 have rendered Congressional Districts 2, 5, 13, 24, and 27 significantly underpopulated (more than five percent below the mean), and Congressional Districts 4, 9, 10, and 16 significantly overpopulated (more than five percent above the mean).  For instance, Congressional District 16 has a population of 884,047 people, which is 86,338 people above the mean.  As another example, Congressional District 2 has a population of 727,856 people, which is 69,853 people below the mean.[10]  Moreover, voters of color residing in these congressional districts will be disproportionately burdened by these malapportioned districts.

52.     Due to these population shifts, all of Florida's existing congressional districts are unconstitutionally malapportioned.  If used in any future election, the current congressional plan will unconstitutionally deprive the Individual Plaintiffs' votes, the votes of the members of Common Cause, and the votes of all Floridians of the equal weighting that they are guaranteed under the United States Constitution.

**V.     As a result of significant population shifts in the past decade across the United States, Florida's congressional districts are also unlawfully apportioned.**

53.     In addition to violating the one-person one-vote requirement, Florida's

---

[10] These numbers are based on deviations from the mean using a 27-district map, but the new congressional map using 2020 Census data should have 28 districts.  In any event, all or virtually all 27 districts in the current congressional map will have unconstitutional population deviations.

current congressional plan also contains fewer districts than the number of Representatives that Floridians are entitled to send to the U.S. House of Representatives in the next Congress.

54.  After the 2010 Census, Florida was allocated 27 seats in the U.S. House of Representatives.  Because of Florida's population growth over the last decade, under the 2020 Census data, Florida is now entitled to 28 congressional seats for the next Congress.

55.  2 U.S.C. § 2c requires each state to have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled."

56.  Because it is highly likely that the Florida Legislature and Governor will not reach agreement on a congressional plan that contains 28 congressional districts, and the current congressional district map only contains 27 districts, any future use of Florida's current apportionment plan would be unlawful under 2 U.S.C. § 2c.

## VI.  Florida needs a lawful congressional map.

57.  Voters, candidates, and Florida's election administration apparatus need new districts, and they need them very soon.

58.  Candidates must file for congressional elections by June 17, 2022. Finalized congressional districts need to be in place as soon as possible, well before candidates in those districts must begin to collect signatures for their nomination

papers. Potential congressional candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing their district boundaries.

59. Voters also have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts. These interests include deciding which candidates to support and whether to encourage others to run; holding elected representatives accountable for their conduct in office; and advocating for and organizing around candidates who will share their views, including by working together with other district voters in support of favored candidates.

60. Delaying the adoption of a new constitutional and lawful congressional plan will also substantially interfere with the Individual Plaintiffs' and Common Cause members' abilities to associate with like-minded citizens, educate themselves on the positions of their would-be representatives, and advocate for the candidates they prefer. And it will jeopardize the principles of fair elections and good government that Common Cause has advocated for since its founding.

61. In light of Florida's near-certain impasse, this Court must ensure the Individual Plaintiffs, Common Cause members, and other Florida voters do not suffer unconstitutional vote dilution. To avoid such an unconstitutional and unlawful outcome, this Court must enjoin the use of the existing congressional plan

and approve a new constitutional and lawful congressional plan to ensure the Individual Plaintiffs,' Common Cause members', and other Floridians have the equal, undiluted votes to which they are constitutionally entitled.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of Article I, Section 2 of the United States Constitution
Congressional Malapportionment**

62.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

63.     Article 1, Section 2 of the U.S. Constitution provides that members of the U.S. House of Representatives "shall be apportioned among the several States . . . according to their respective Numbers."  This provision "intends that when qualified voters elect members of Congress each vote be given as much weight as any other vote," *Wesberry v. Sanders*, 376 U.S. 1, 7 (1964), meaning that state congressional districts must "achieve population equality 'as nearly as is practicable,'" *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry*, 376 U.S. at 7-8.

64.     Article I, Section 2 "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). *Any* variation from exact population equality

must be narrowly justified.  *Id.* at 731.

65.     Given this requirement, when the Florida Supreme Court adopted the remedial congressional plan drawn in 2015, it crafted a plan in which the population deviation among districts was no more than one person.   Now, the population deviation among Florida's current congressional districts is far higher.

66.     In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configuration of Florida's congressional districts—which was drawn based on 2010 Census data—is now unconstitutionally malapportioned.  No justification can be offered for the deviation among the congressional districts because any justification would be based on outdated population data.

67.     Any future use of Florida's current congressional district plan would violate Individual Plaintiffs' and Common Cause members' constitutional right to cast equal, undiluted votes.

## COUNT II

### Violation of 2 U.S.C. § 2c
### Congressional Malapportionment

68.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 61 of this Complaint as though fully set forth herein.

69.     2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the

number of Representatives to which such State is so entitled."

70.    Florida's current congressional district plan contains 27 districts, but Florida is currently allocated 28 seats in the U.S. House of Representatives.  As a result, the current congressional district plan violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [Florida] is so entitled."

71.    Any future use of Florida's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Individual Plaintiffs' and Common Cause members' votes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Declare that the current configuration of Florida's congressional districts violates Article I, Section 2 of the U.S. Constitution and 2 U.S.C. § 2c;

b.    Preliminarily and permanently enjoin Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Florida's current congressional district plan in the 2022 election, or any election thereafter;

c.   Establish a schedule that will enable the Court to adopt and implement a new congressional district plan by a date certain;

d.   Implement a new congressional district plan that complies with Article I, Section 2 of the U.S. Constitution and 2 U.S.C. § 2c;

e.   Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees under 42 U.S.C. § 1988; and

f.   Grant such other and further relief as this Court deems just and proper.

Date: March 11, 2022

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

By:   s/Henry M. Coxe III
        Henry M. Coxe III
        Florida Bar No.: 0155193
        hmc@bedellfirm.com
        Michael E. Lockamy
        Florida Bar No.: 69626
        mel@bedellfirm.com
        The Bedell Building
        101 East Adams Street
        Jacksonville, Florida 32202
        Telephone: (904) 353-0211
        Facsimile: (904) 353-9307

                -and-

        Gregory L. Diskant*
        H. Gregory Baker*
        Peter A. Nelson*
        Catherine J. Djang*
        Jacob Tuttle Newman*
        Ariel Rudofsky*

24

PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
gldiskant@pbwt.com
hbaker@pbwt.com
pnelson@pbwt.com
cdjang@pbwt.com
jtuttlenewman@pbwt.com
arudofsky@pbwt.com

Allison J. Riggs*
Katelin Kaiser*
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
allison@southerncoalition.org
katelin@scsj.org

* *pro hac vice* forthcoming


*Attorneys for Plaintiffs*