IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COMMON CAUSE FLORIDA, et al.,

     Plaintiffs,

v.                                     Case No. 4:22-cv-109-AW-MAF

LAUREL M. LEE,

     Defendant.

_____/

## ORDER DENYING MOTION FOR RECUSAL

This case involves redistricting, and Plaintiffs contend I should step aside because I was counsel years ago in other cases that also involved redistricting. Plaintiff have therefore moved for my recusal. Their motion has no legal merit, and this order explains why.

## I.

Plaintiffs base their motion on a federal statute (28 U.S.C. § 455) and the Code of Conduct for United States Judges (Canon 3(C)(1)). The statute requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Code of Conduct similarly provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3(C)(1). The legal analysis is the same under either. *Cf. Delta Air Lines, Inc. v. Sasser*, 127 F.3d 1296, 1298 n.3 (11th Cir. 1997). And the applicable standard is settled: these provisions require

1

recusal "only if 'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007) (quoting *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)). As I will explain below, Plaintiffs have not come close to meeting that standard. But before I turn to that explanation, let me cover what Plaintiffs are *not* arguing.

## A.

First, Plaintiffs do not argue that I would, in fact, be biased or prejudiced. They cite only the standard of "whether an objective, disinterested lay observer . . . would entertain a significant doubt about the judge's impartiality." ECF No. 54 at 2 (quoting *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013)). A separate provision requires recusal when a judge "has a personal bias or prejudice concerning a party," 28 U.S.C. § 455(b)(1), but that provision applies only when the judge "*actually has* a personal bias or prejudice concerning a party," *Amedeo*, 487 F.3d at 828 (cleaned up). Plaintiffs do not invoke that provision or make any argument that I have such a personal bias or prejudice. *See* ECF No. 54 at 2-3 (arguing the need "to preserve the perception of impartiality" and that, "[i]rrespective of [my] ability to remain evenhanded," others might have doubts). To be sure, "[t]he very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the

2

appearance of impropriety." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). But it warrants noting here that there is no allegation of *actual* bias or prejudice.

Second, Plaintiffs do not argue that I served as an attorney in *this* case. Separate recusal provisions require a judge to disqualify when "in private practice he served as lawyer in the matter in controversy," or when "he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. §§ 455(b)(2), (3). Plaintiffs don't rely on those provisions either, likely because they recognize "the matter in controversy" here is not one I handled as an attorney. Although they quote from my Senate questionnaire where I said "I would recuse from any matter in which I had (or might have had) personal involvement, either as a lawyer or judge," ECF No. 54 at 16, Plaintiffs do not contend I had any prior involvement in this matter. I did not. This is a different case, featuring different issues, addressing a different map, in a different redistricting cycle—nearly a decade after I stopped working on redistricting matters.

Third, Plaintiffs do not argue that I took positions or offered opinions on any redistricting issues in my personal capacity. Everything they point to concerns my work as an attorney representing a client.[1]

Fourth, Plaintiffs do not argue that my former law firm's involvement in this case warrants recusal. Nonetheless, their repeated mentions of the firm suggest they attach some significance to it.[2] I left the law firm more than nine years ago; I've been gone longer than I was there. My former association with that firm provides no basis to recuse. "[A]ssuming that a judge is no longer receiving financial payment from a former law firm, a two-year recusal period is generally reasonable." *Draper v. Reynolds*, 369 F.3d 1270, 1281 n.18 (11th Cir. 2004) (citing II *Guide to Judiciary Policies and Procedures* Compendium § 3.3–1(b) (2003)); *see also id.* at 1281 (noting that "there is no merit in Draper's assertion that Judge Camp's previous affiliation with the Glover & Davis law firm suggests bias"). At any rate, the firm is

---

[1] This is not to say that past advocacy on my own behalf would warrant recusal. *See United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976) ("The mere fact that a judge has previously expressed himself on a particular point of law is not sufficient to show personal bias or prejudice." (citation omitted)); *see also infra*.

[2] *See* ECF No. 54 at 3 (noting that representation "occurred during his employment at the private firm GrayRobinson" and that the "firm continues its work on behalf of the House in this redistricting cycle"); *id.* at 11 ("GrayRobinson—Judge Winsor's former firm—served as counsel for the Florida House in this [2022] briefing."); *id.* at 14-15 ("[L]awyers from Judge Winsor's prior firm, GrayRobinson, continue their representation of the Florida House in redistricting matters and have entered notices of appearance in this case.").

no longer involved in this case. After the firm appeared for certain legislative defendants, ECF No. 45, Plaintiffs voluntarily dismissed those parties, ECF Nos. 57, 59.

Finally, Plaintiffs have not argued (at least not explicitly) that any of the cases they contend warrant recusal are closely related to this case. (More on those cases below.)

**B.**

Turning now to what Plaintiffs *do* argue: They argue that because I once litigated Florida redistricting issues as a lawyer, I cannot decide Florida redistricting issues as a judge. This argument finds no support in the law. "[A]ll or almost all judges were advocates on one side or another of many controversies before becoming judges." *Evans v. Stephens*, 387 F.3d 1220, 1227 n.13 (11th Cir. 2004). And rather than require that they recuse as to issues they may have once addressed in litigation, the law provides that "[m]ere representation and opinions about a previous unrelated matter—especially made before one took the oath of office—do not disqualify a judge." *Id.*

This principle is so well settled that it comes as little surprise that Plaintiffs do not cite a single case in which a court concluded that a judge's previous advocacy

as legal counsel warranted recusal in circumstances like these.[3] One would think that were my recusal appropriate here, Plaintiffs would cite on-point authority saying so. *Cf. Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 922 (2004) (Scalia, J., in chambers) ("When I learned that Sierra Club had filed a recusal motion in this case, I assumed that the motion would be replete with citations of legal authority, and would provide some instances of cases in which, because of activity similar to what occurred here, Justices have recused themselves or at least have been asked to do so."). Yet Plaintiffs cite no cases saying a judge must recuse in a case involving a topic on which he once litigated.

Plaintiffs' inability to cite such a case does not flow from any lack of resources (their motion credits seven attorneys) or insufficient time (Plaintiffs' motion came seventeen days after the case was assigned). More likely it is because the law does not support their position.

Indeed, "[c]ourts have uniformly rejected the notion that a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case,

---

[3] In fact, Plaintiffs cite only one case that even addressed the application of § 455 or Canon 3(C)(1), and then only to quote the applicable standard. ECF No. 54 at 14. (In that case—*United States v. Scrushy*—the Eleventh Circuit affirmed the judge's decision to not recuse. 721 F.3d at 1303.) Plaintiffs' remaining case citations are to cases I worked on—not cases addressing recusal issues. (They do include one citation to *Aetna Life Insurance v. Lavoie*, 475 U.S. 813 (1986), for the proposition that "justice must satisfy the appearance of justice." ECF No. 54 at 14. That was a recusal case, but not one applying § 455 or Canon 3(C)(1).)

6

even when that position is directly implicated in the case before the court." *Carter v. W. Publ'g Co.*, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999) (Tjoflat, J.) (collecting cases). And as then-Judge Kavanaugh said in declining to recuse, "judges who previously participated in policy matters and provided policy advice in government do not ordinarily recuse in litigation involving those policy issues." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 471 F.3d 1355, 1358 (D.C. Cir. 2006) (applying § 455(b)(3) but also concluding recusal not appropriate under "the general provision of § 455(a)"); *cf. also Laird v. Tatum*, 409 U.S. 824, 831 (1972) (Rehnquist, J.) (noting "that none of the former Justices of this Court since 1911 have followed a practice of disqualifying themselves in cases involving points of law with respect to which they had expressed an opinion or formulated policy prior to ascending to the bench"). Plaintiffs address none of these authorities.

In lieu of detailing any legal authority supporting their position, they detail the cases that I worked on as an attorney, citing the cases themselves, briefs filed in them, and my Senate questionnaire addressing them. But the tenuous connection between those cases and this case only further undermines their position.[4] The map

---

[4] My involvement in the cited cases was already known to me. And because the duty to recuse under § 455(a) "is an 'affirmative, self-enforcing obligation,'" *Jenkins v. Anton*, 922 F.3d 1257, 1271 (11th Cir. 2019) (quoting *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989)), if recusal were appropriate, I would have recused without waiting for a motion. As Plaintiffs acknowledge, I have recused when appropriate. *See* ECF No. 54 at 2 ("Since joining the bench, Judge Winsor has

Plaintiffs challenge in this case was adopted by the Florida Supreme Court in 2015, after I left private practice and when I was no longer working on redistricting matters. *See League of Women Voters of Fla. v. Detzner*, 179 So. 3d 258 (2015). And the cases I worked on as a lawyer were not related to the case now before this court.

Plaintiffs first point to my work in a 2006 case involving the state-law issue of whether the ballot summary for a citizen initiative amendment (relating to redistricting) was too misleading for submission to the electorate. *See Adv. Op. to Att'y Gen. re: Indep. Nonpartisan Comm'n to Apportion Legis. & Cong. Dists. Which Replaces Apportionment by Legis.*, 926 So. 2d 1218 (Fla. 2006). They then note a 2010 case that presented a similar state-law issue. ECF No. 54 at 6 (citing *Roberts v. Brown*, 43 So. 3d 673, 675 (Fla. 2010)). And then a case dealing with Amendment 7—also presenting a state-law ballot-placement issue. *Id.* at 6-7 (citing *Fla. Dep't of State v. Fla. State Conf. of NAACP Branches*, 43 So. 3d 662, 664 (Fla. 2010)). The present case raises no state-law ballot-placement issues.

They also cite cases addressing the validity of the 2012 *state* legislative maps. ECF No. 54 at 8. Those maps are no longer in place. Through its once-a-decade

---

taken seriously his obligation to recuse himself when his impartiality might reasonably be questioned."); *id.* at 16 ("While serving both on the state court and in this Court, Judge Winsor has conscientiously recused himself from matters when circumstances warranted.").

process, the Legislature recently replaced them. Besides, the present case raises no issues related to *state* districting.

Plaintiffs also cite a federal case that addressed whether certain portions of Florida's constitution addressing redistricting were permissible under the Elections Clause. *Id.* at 7-8. But that issue is not present in this case. And even if it were, that would not warrant recusal. *See Carter*, 1999 WL 994997, at *9.

Plaintiffs title their next section "Representation Concerning Florida's Current Congressional District Map." ECF No. 54 at 9. They correctly note that I was once involved in litigation challenging *a* congressional map—but it was not the map Plaintiffs challenge here. Again, the map Plaintiffs challenge was adopted by the Florida Supreme Court in 2015, after my involvement in redistricting litigation ended. The validity of the earlier map is not an issue in this case. (And although it makes no difference for purposes of this order, I note the validity of the 2015 map is apparently not at issue either: the parties' joint report says "[t]he Secretary of State will not attempt to hold elections based on the existing congressional district map." ECF No. 61 at 2.)

Finally, Plaintiffs include a section addressing "Florida's 2020-Cycle Redistricting." ECF No. 54 at 11. This section includes no cases on which I worked, and it is unclear why Plaintiffs included this section at all. As they acknowledge, I left private practice in 2013, long before the 2020 cycle began. *Id.* at 3 (noting that

my "advocacy and representation . . . on behalf of the Florida House of Representatives . . . occurred . . . from 2005 to 2013").

In short, although many relate to redistricting in some way or another, the cases I worked on were not *this* case. It is possible that in some extraordinary case, past representation on related issues might warrant recusal, *cf. Baker & Hostetler LLP*, 471 F.3d at 1358 (Kavanaugh, J.) ("[R]are and extraordinary circumstances arising out of prior government employment—but not covered or envisioned by § 455(b)(3)—conceivably could occur and support recusal under § 455(a)."), but that is not the situation here. Plaintiffs point to nothing "rare" or "extraordinary" about my redistricting litigation. I was a lawyer representing a client. Throughout my career as a practicing attorney, that is what I did. I handled many cases for many clients in many courts. I addressed many legal issues. And some had to do with redistricting.

Those are the facts. *Cf. In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (noting that "[r]ecusal decisions under '§ 455(a) are extremely fact driven'"). And no objective, disinterested person with knowledge of those facts would harbor any significant doubt about my impartiality in this case. It is not enough to suggest that *somebody* might think I'd be unfair. The applicable standard is an objective one: what matters is "whether an *objective*, *fully informed* lay observer would entertain significant doubt about the judge's impartiality." *Christo v. Padgett*, 223 F.3d 1324,

1333 (11th Cir. 2000) (emphasis added). The question is not whether "the hypersensitive, cynical, and suspicious person" might harbor doubts. *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003).

It is true that when it comes to the appearance of partiality, "any doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1321 (citing *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989)). But here, there is no doubt. It is clear, based on legal precedent, that recusal is not warranted. It is clear that no disinterested person armed with facts—that is, knowing that during last decade's redistricting cycle, I represented the House in other redistricting cases, in other courts, addressing other issues—could "entertain significant doubt" about my impartiality *in this case*. Plaintiffs are not entitled to the recusal they seek.[5]

## II.

Having shown that the law does not require me to recuse, I now turn to the question of whether I should recuse anyway. As it turns out, the answer to that question is just as clear. Binding precedent holds that "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for

---

[5] Another problem with Plaintiffs' argument is that it lacks any limiting principle. Suppose a criminal defense lawyer argued on behalf of a client that a criminal statute was unconstitutional. Suppose she made the same argument in several cases, as lawyers often do. If she was a judge ten years later, could she not preside over cases requiring application of that criminal statute? Plaintiffs do not say. But the authorities this order cites show that she could.

him to do so when there is." *In re Moody*, 755 F.3d at 895 (citation omitted); *see also United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) ("[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation."). In other words, because the law does not require me *to* recuse, it requires me to *not* recuse.

One might argue that a judge facing a public call to recuse could alleviate even a *hint* of impartiality by stepping aside, even when the law does not demand it. One might argue that is the safer course. But the Eleventh Circuit has emphasized that this is not the answer: "If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges." *Greenough*, 782 F.2d at 1558.

"Congress required that a judge's impartiality must '*reasonably* be questioned' in order for the judge to recuse, because 'there is the need to prevent parties from . . . manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.'" *Carter*, 1999 WL 994997, at *2 (Tjoflat, J.) (quoting *FDIC v. Sweeney*, 136 F.3d 216, 220 (1st Cir. 1998) (internal quotation marks omitted)); *see also Thomas v. Trustees for Columbia Univ.*, 30 F. Supp. 2d 430, 431 (S.D.N.Y. 1998) (noting that judge must not recuse unnecessarily, lest "litigants would be encouraged to advance speculative and ethereal arguments for recusal and thus arrogate to themselves a veto power over the assignment of judges") (cited in

12

*Carter*, 1999 WL 994997, at \*2). Indeed, if judges granted meritless recusal motions—effectively giving parties "carte blanche to disqualify a judge who is not to their liking," *Carter*, 1999 WL 994997, at \*10—this would significantly undermine public confidence in the judiciary.

The law requires that I must not recuse.

Plaintiffs' motion (ECF No. 53) is DENIED.

SO ORDERED on April 6, 2022.

s/ *Allen Winsor*
United States District Judge

13