IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COMMON CAUSE FLORIDA, et al.,

   *Plaintiffs*,

v.                                    Case No. 4:22-cv-109-AW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

   *Defendants*.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**

Defendants Governor Ron DeSantis and Secretary of State Cord Byrd file this reply in support of their motion to dismiss or, in the alternative, motion to stay. Attached is their memorandum of law.

1

|  | Respectfully submitted, |
|---|---|
| Bradley R. McVay (FBN 79034) | /s/ Mohammad O. Jazil |
| brad.mcvay@dos.myflorida.com | Mohammad O. Jazil (FBN 72556) |
| Ashley Davis (FBN 48032) | mjazil@holtzmanvogel.com |
| ashley.davis@dos.myflorida.com | Gary V. Perko (FBN 855898) |
| FLORIDA DEPARTMENT OF STATE | gperko@holtzmanvogel.com |
| R.A. Gray Building | Michael Beato (FBN 1017715) |
| 500 S. Bronough St. | mbeato@holtzmanvogel.com |
| Tallahassee, FL 32399 | zbennington@holtzmanvogel.com |
| (850) 245-6536 | HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK |
|  | 119 S. Monroe St. Suite 500 |
|  | Tallahassee, FL 32301 |
|  | (850) 270-5938 |
| July 15, 2022 | Jason Torchinsky (Va. BN 47481) (D.C. BN 976033) |
|  | jtorchinsky@holtzmanvogel.com |
|  | HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK |
|  | 15405 John Marshall Hwy Haymarket, Haymarket, VA 20169 |
|  | (540) 341-8808 |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2022, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.

**MEMORANDUM OF LAW**

Defendants' motion fully explains why this Court should dismiss the amended complaint or, in the alternative, stay this case. This reply makes four brief points in response to Plaintiffs' opposition. Doc. 109. Specifically, the Governor is not a proper defendant; Plaintiffs failed to plausibly allege standing; Plaintiffs failed to plausibly allege intentional discrimination; and these federal proceedings should be stayed in light of the state ones.

**I.**

*First*, both parties agree that the Secretary is a proper *Ex parte Young* defendant; however, Plaintiffs contend that the Governor is one too. According to Plaintiffs, (1) the Governor orders and directs the Secretary, and (2) the Governor was the primary force behind the Enacted Map. Doc. 109 at 2-8.

Tellingly, Plaintiffs fail to address the question of what, if any, relief this Court can order against the Governor. Because that answer is none, the Governor is not a proper *Ex parte Young* defendant. *See Supporting Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021) (explaining that a proper defendant is one against whom "an injunction prohibiting enforcement would be effectual"); *see also Supporting Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1210 (N.D. Fla. 2020) (noting that the requirements of *Ex parte Young* overlap with the standing requirements, including redressability, and dismissing state defendants under *Ex parte Young*).

3

Turning to Plaintiffs' points, the Governor's supervisory power over the Secretary is simply a general executive power, like the Governor's power to take care that state laws are enforced. *See* Doc. 104 at 6 (citing cases). And that power underscores that another state official has a better and more direct "connection" to the challenged state action that Plaintiffs seek to enjoin—making that state official, and not the Governor, the more appropriate *Ex parte Young* defendant. *See generally Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor," "the governor's general executive power is insufficient to confer jurisdiction."); *see also* Doc. 104 at 7 (explaining the Secretary's election duties).

The *Ex parte Young* inquiry also does not turn on whether the Governor has plenary or shared supervisory authority over the enforcing official. This Court previously dismissed the Governor as a party in a case concerning the Agency for Healthcare Administration and the Agency for Persons with Disabilities—agencies whose heads only he oversees. *Dykes v. Dudek*, No. 4:11-cv-116, 2011 WL 4370608, at *5 (N.D. Fla. Sept. 19, 2011); *see also* Fla. Stat. § 20.197 (Agency for Persons with Disabilities); Fla. Stat. § 20.42 (Agency for Healthcare Administration). In doing so, this Court explained that "the Governor's responsibility over" "agencies" or departmental heads "amounts to general executive power[,] which is not sufficient to permit jurisdiction over him," making no distinction between agencies he oversees by himself or with others as part of a collegial body. *Dykes*, 2011 WL 4370608, at *6.

4

"[I]nvestigating and reviewing" administrative actions "are part of his normal functions of administration," and don't fit within *Ex parte Young. Id.*

Plaintiffs also fail in their attempt to make the Governor the proper *Ex parte Young* defendant through the supposedly "unique set of facts putting the Governor himself at the center of the events underlying this case." Doc. 109 at 3. This Court rejected such an argument days ago in *Falls v. DeSantis*, No. 4:22-cv-00166, Doc. 68 (N.D. Fla. July 8, 2022). The plaintiffs in *Falls* considered their case and facts to be unique and sufficient to turn the Governor's support for supposedly controversial legislation into an invitation to sue him. But this Court reiterated that the Governor's "general executive authority to" "oversee the executive branch, standing alone, is insufficient to make him the proper party whenever a plaintiff seeks to challenge the constitutionality of a law." *Id.* at slip op. 2 (cleaned up). Again, what matters is which state official can provide the plaintiff with complete relief. Here, that official is not the Governor of Florida.

At best, assuming for the sake of argument that Plaintiffs are correct that the Governor is a proper defendant, the Governor's inclusion would be redundant. If the purpose of the *Ex parte Young* exception to state sovereign immunity is to "permit the federal courts to vindicate federal rights," *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citation omitted), and if the way to meet that purpose is to hail into federal court the state official who is responsible for enforcing the challenged state law and who can provide the plaintiff with relief, *see Grizzle v. Kemp*, 634 F.3d 1314, 1319

5

(11th Cir. 2011), then Plaintiffs have failed to explain how the Governor can provide any additional relief distinct and apart from the Secretary. After all, the Secretary is the chief election officer of the state. Plaintiffs can get complete relief, if this Court ultimately sides with Plaintiffs, from the Secretary. Including the Governor as a separate defendant thus makes little sense. *See, e.g.*, *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) (dismissing the Governor and Attorney General on the redundant-defendant basis, and reasoning that "an order directed to the Secretary" of the Department of Health or "Surgeon General" "will be sufficient to provide complete relief"); *Children A & B v. State*, 355 F. Supp. 2d 1298, 1300 (N.D. Fla. 2004) (dismissing state defendants on that basis).

## II.

*Second*, Plaintiffs say (1) that Common Cause, FairDistricts Now, and Florida State Conference of the NAACP have organizational and associational standing; and (2) the organizations have standing to challenge District 13 and District 14. Doc. 109 at 9-13. They say this is so because threadbare allegations are enough at the pleading stage. Not true.

"Threadbare recitals of" "elements," "supported by mere conclusory statements," don't "suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading rule contains no exceptions for pleading Article III standing.

Plaintiffs here merely conclude—without sufficient factual allegations—that their organizations have standing under a diversion-of-resources theory. They don't

6

sufficiently "explain where" they "would have to divert resources away from in order to spend additional resources on combating the effects of the" state's "alleged conduct." *GALEO v. Gwinnett Cnty. Bd. of Registration & Elections*, No. 20-14540, 2022 U.S. App. LEXIS 15743, at *20 (11th Cir. June 8, 2022) (cleaned up). True, the Eleventh Circuit said in *GALEO* that "broad allegation[s] of diversion of resources" were sufficient at the pleading stage for the *GALEO* plaintiffs. *Id.* at *22. But broad allegations are not the same as conclusory allegations. Unlike Plaintiffs here, the *GALEO* plaintiffs pled what resources they would divert and the place from which they would divert those resources. *Compare* Doc. 104 at 10 n.1 (quoting the *GALEO* second amended complaint), *with* Doc. 97 ¶¶ 3-5.

Plaintiffs also say that they have established associational standing without identifying at least one specific member allegedly harmed by the state. That's enough, per Plaintiffs, because their organizations have some members somewhere in each congressional district. *See generally* Doc. 109 at 13. But the U.S. Supreme Court and the Eleventh Circuit have rejected this kind of "probabilistic analysis." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203-04 (11th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-97 (2009)). In turn, the Eleventh Circuit requires Plaintiffs to "make specific allegations establishing that at least one identified member has suffered or will suffer harm." *Id.* Pleading that at least one member of the organizations resides in one of the affected congressional districts is thus an absolute.

7

Plaintiffs rely on *Doe v. Stincer*, 175 F.3d 879, 881 (11th Cir. 1999), to suggest that no such identification is necessary. Doc. 109 at 12. Decided at the summary judgment stage, *Doe* pre-dated the prohibition on probabilistic standing—a prohibition established by cases like *Summers* (in 2009) and *Georgia Republican Party* (in 2018). *Doe* is also a pre-*Iqbal* case and didn't need to square its analysis with *Iqbal*'s pleading standards. In sum, Plaintiffs can't say that they have standing because some of their members are *probably* harmed.

Since the organizational Plaintiffs don't have standing, and because no individual Plaintiff lives in Districts 13 or 14, Plaintiffs' claims concerning these districts should be dismissed. *See* Doc. 104 at 11-12. Two individual Plaintiffs have standing to challenge only enacted Districts 2 and 10.

### III.

*Third*, the amended complaint doesn't state a claim for relief under the Fourteenth and Fifteenth Amendments. Suggestions that an intentional discrimination case must always proceed past the pleading stage are misplaced.

*Iqbal* itself was an intentional discrimination case. 556 U.S. at 662. In *Iqbal*, Plaintiffs' factual allegations of invidious discrimination were dismissed "given more likely explanations." *Id.* at 681. And the U.S. Supreme Court concluded that the allegations "amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, namely, that" the defendants "adopted a policy

because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (cleaned up).

So too here. For example, Plaintiffs' allegation that the delay in calling a special election in 2021 doesn't demonstrate intentional discrimination, Doc. 97 ¶¶ 33-39, given the presumption of good faith that *must* be accorded. *League of Women Voters of Fla. v. Fla. Sec'y of State*, 32 F.4th 1363, 1373 (11th Cir. 2022). That presumption (coupled with likelier explanations) could establish that the local supervisor of election suggested a schedule for the special election but then changed his mind. *See Iqbal*, 556 U.S. at 681; *see also* Doc. 104 at 21. The same is true of efforts to redraw some districts, Doc. 97 ¶ 101, where the "more likely explanation[]" is that the state sought to draw more compact congressional districts and adhere to traditional districting criteria. *Iqbal*, 556 U.S. at 681; *see also* Doc. 104 at 20. Plaintiffs must plead sufficient facts to show that the action taken was done "because of," not "in spite of," race. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).  That they haven't done.

What's more, in their opposition memorandum, Plaintiffs suggest that their amended complaint "presents detailed factual allegations which go to the heart of multiple *Arlington Heights*" factors. Doc. 109 at 21 (cleaned up). These allegations don't "nudge[]" their "claims of invidious discrimination across the line from conceivable to plausible" either, *Iqbal*, 556 U.S. at 680, especially considering the factors' refinement under *Greater Birmingham Ministries v. Secretary of Alabama*, 992 F.3d 1299 (11th Cir. 2021). While Plaintiffs state that "Florida has a long and unbroken history of anti-Black voter

9

suppression, including recent actions by Governor DeSantis," Doc. 109 at 21, ¶ 2, *Greater Birmingham* clarifies that the historical inquiry must be "[]limited" and that a state's "history" cannot "ban[] its legislature from ever enacting otherwise constitutional laws about voting." 992 F.3d at 1325. And while Plaintiffs rely on, in part, statements from legislative *opponents* of the Enacted Map to establish legislative intent to discriminate, Doc. 109 at 21, ¶ 5, *Greater Birmingham* questioned whether statements from *the sponsor* of the at-issue state law can establish legislative intent. 992 F.3d at 1323-25. Statements from the opponents are even less instructive. *See Butts v. NYC*, 779 F.2d 141, 147 (2d Cir. 1985) ("The Supreme Court has" "repeatedly cautioned" "against placing too much emphasis on the *contemporaneous* views of the bill's *opponents*." (emphasis added) (collecting citations)); *Mercantile Tex. Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 638 F.2d 1255, 1263 (5th Cir. Unit A Feb. 1981) (same).

At base, as described more fully in the Defendants' motion, Plaintiffs' conclusory allegations regarding discriminatory intent and effect don't satisfy *Iqbal*. Doc. 104 at 12-22. And at best, Plaintiffs' amended complaint asserts a novel constitutional theory, that a race-neutral redistricting plan is unconstitutional and therefore demands a race-based redraw. This theory turns the Equal Protection Clause on its head. Doc. 104 at 16-18. It should be rejected, and the amended complaint should be dismissed.

## IV.

*Fourth*, Plaintiffs contend that the state court case *Black Voters Matter Capacity Building Institute*, 2022-CA-000666 (Fla. 2d Cir. 2022), doesn't provide a basis for a stay.

Doc. 109 at 29. According to Plaintiffs, "there is no guarantee that the state-court action will be adjudicated on the merits or in advance of the next election cycle." Doc. 109 at 31. Yet, just yesterday, on July 14, 2022, the state court held a hearing on the legislator-defendants' motion to dismiss and granted that motion. As a result of the state court action, the pleading stage of the litigation is now over, and discovery has begun. During the hearing, the state court also stated that it didn't foresee an issue with having a trial on the merits in spring or summer 2023, with the case taken precedence over other civil matters before it. *See* Second Judicial Court Hearing in Congressional Redistricting Case, Fla. Channel (July 14, 2022), https://bit.ly/3yIIwyH (relevant statements begin at 50:30). Thus, staying this case is warranted under *Growe v. Emison*, 507 U.S. 25 (1993).

## V.

Therefore, the Governor and Secretary ask this Court to grant their motion to dismiss or, in the alternative, motion to stay.

Respectfully submitted,

| | |
|---|---|
| Bradley R. McVay (FBN 79034) | /s/ Mohammad O. Jazil |
| brad.mcvay@dos.myflorida.com | Mohammad O. Jazil (FBN 72556) |
| Ashley Davis (FBN 48032) | mjazil@holtzmanvogel.com |
| ashley.davis@dos.myflorida.com | Gary V. Perko (FBN 855898) |
| FLORIDA DEPARTMENT OF STATE | gperko@holtzmanvogel.com |
| R.A. Gray Building | Michael Beato (FBN 1017715) |
| 500 S. Bronough St. | mbeato@holtzmanvogel.com |
| Tallahassee, FL 32399 | zbennington@holtzmanvogel.com |
| (850) 245-6536 | HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK |
| | 119 S. Monroe St. Suite 500 |
| | Tallahassee, FL 32301 |
| | (850) 270-5938 |
| July 15, 2022 | Jason Torchinsky (Va. BN 47481) (D.C. BN 976033) |
| | jtorchinsky@holtzmanvogel.com |
| | HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK |
| | 15405 John Marshall Hwy Haymarket, Prince William, VA 20169 |
| | (540) 341-8808 |

12

## **LOCAL RULE 7.1(F) CERTIFICATION**

The undersigned certifies that this memorandum contains 2,190 words, excluding the case style and certifications.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2022, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.