IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| Common Cause Florida, FairDistricts Now, Florida State Conference of the National Association for the Advancement of Colored People Branches, Cassandra Brown, Peter Butzin, Charlie Clark, Dorothy Inman-Johnson, Veatrice Holifield Farrell, Brenda Holt, Rosemary McCoy, Leo R. Stoney, Myrna Young, and Nancy Ratzan,<br><br>                *Plaintiffs,*<br><br>    v.<br><br>Cord Byrd, in his official capacity as Florida Secretary of State,<br><br>                *Defendant*. | Case No. 4:22-cv-109-AW-MAF |

## JOINT PRE-TRIAL REPORT

Pursuant to the Court's August 7, 2023 Order Regarding Trial and Schedule, Dkt No. 171, Plaintiffs Common Cause Florida, FairDistricts Now, Florida State Conference of the National Association for the Advancement of Colored People Branches, Cassandra Brown, Peter Butzin, Charlie Clark, Dorothy Inman-Johnson, Veatrice Holifield Farrell, Brenda Holt, Rosemary McCoy, Leo R. Stoney, Myrna Young, and Nancy Ratzan (collectively the "Plaintiffs"), and Defendant Cord Byrd, in his official capacity as Florida Secretary of State, file this joint pre-trial report.

## I.     The Total Anticipated Length of Each Side's Case

As the Court noted, there are 8 total days reserved for this trial. The parties believe that they will be able to finish presenting their cases before those 8 days are over. The Plaintiffs anticipate that they will be able to complete their case in 3-5 days. The Defendant anticipates that he will be able to complete his case in 2 days. To err on the side of caution and to fairly allocate the time, both parties reserve 22 hours—on the assumption of 5.5-hour average trial days—including 30 minutes devoted to opening statements.

Both parties intend to call J. Alex Kelly as a witness. The parties agree that he should be called only once, because he is the Interim Chief of Staff to Governor DeSantis and the Secretary of FloridaCommerce. But the parties dispute when Mr. Kelly should be called. The Plaintiffs intend to call J. Alex Kelly as an adverse witness and the first witness during their case-in-chief, and permit the Defendant to examine beyond the scope of Plaintiffs' examination so as to adduce whatever testimony the Defendant wishes. The Defendant intends to call him as witness during his case-in-chief and to leave open Plaintiffs' case until Plaintiffs' cross examination is completed. Plaintiffs' proposal reflects the ordinary course of trial as they bear the burden of proof and Mr. Kelly's testimony is material to Plaintiffs' case. Moreover, Plaintiffs' experts expect to rely on his testimony and his testimony early in Plaintiffs' case may enable Plaintiffs to shorten the testimony of

other witnesses. Defendants maintain that calling Mr. Kelly as the last witnesses in Plaintiffs' case-in-chief and the first witness in Defendants' case-in-chief offers the appropriate compromise under the circumstances.

## II. The Facts to Which the Parties Have Stipulated

Pursuant to this Court's order dated August 7, 2023, the Parties stipulate to the following facts for the purposes of this case:

1. The compactness numbers, demographic information, political information, and other districting criteria (such as boundary analysis and city and county splits) for all districts used for the 2016-2020 congressional elections ("Benchmark Plan"), all districts used in the legislature's proposed two-map plan, consisting of C8019 and C8015 (the "Two-Map Plan") and all districts used for the 2022 congressional election ("Enacted Plan"), as available on floridaredistricting.gov.

2. The following are judicially noticeable and may be admitted into evidence without further authentication: (1) Transcripts of legislative committee and floor proceedings; (2) the Governor's Veto Message and Advisory Request to the Florida Supreme Court; (3) Florida's prior congressional plans created after the 2000 and 2010 decennial census; (4) the Florida Legislature's redistricting plans

that were published during the 2021-2022 redistricting cycle; and (5) redistricting committee meeting materials from the 2022 regular session and special session.

3. In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution. The 2020 Census reported that Florida's resident population had grown to 21,538,187—a 14.6% increase from a decade ago.

4. Because of Florida's population growth, Florida gained an additional congressional district. Accordingly, Florida has been apportioned 28 congressional seats for the 2022 Congress, one more than the 27 seats it was apportioned following the 2010 Census.

5. In Florida, congressional district plans are enacted via legislation, which must pass both chambers of the Legislature and be signed by the Governor (unless the Legislature overrides the Governor's veto by a two-thirds vote in both chambers).

6. The rules for congressional redistricting in Florida are set forth in Article III, Section 20 of the Florida State Constitution (the "Fair Districts Amendments") and in federal law. The "Tier One" standards, found in Section 20(a), prohibit political gerrymandering, incumbency protections, and drawing districts with "the intent or result of denying or abridging the equal opportunity of

racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice" and state that "districts shall consist of contiguous territory." Fla. Const. art. III, § 20(a).

7. The "Tier Two" standards, in Section 20(b), further provide that "districts shall be as nearly equal in population as is practicable; districts shall be compact; and districts shall, where feasible, utilize existing political and geographical boundaries." These criteria are subordinate to the Tier One standards. They are to be adhered to "unless compliance with the standards . . . conflicts with the [Tier One] standards . . . or with federal law." Fla. Const. art. III, § 20(b).

8. The then-current enacted congressional district maps are used as the "Benchmark Plan" against which proposed maps are compared to ensure that the proposed maps comply with federal and Florida state redistricting laws, including the Fair Districts Amendments. For the 2020 redistricting, the Benchmark Plan congressional maps were those used from 2016 to 2020.

9. On February 1, 2022, Governor DeSantis requested an advisory opinion from the Florida Supreme Court about the constitutionality of any congressional redistricting bill that retained a Black-performing version of CD-5. Letter from Governor DeSantis, at 4, *Advisory Opinion to Governor re: Whether*

*Article III, Section 20(a) of the Florida Constitution Requires the Retention of a District in Northern Florida*, No. SC22-139 (Fla. Feb. 1, 2022) (citing *League of Women Voters of Fla. v. Detzner*, 179 So. 3d 258, 271 (Fla. 2015) (*Apportionment VIII*)).

10. On February 10, 2022, the Florida Supreme Court declined to answer the Governor's question. *See Advisory Opinion to Governor re: Whether Article III, Section 20(a) of the Florida Constitution Requires the Retention of a District in Northern Florida*, No. SC22-139, 2022 WL 405381 (Fla. Feb. 10, 2022) (per curiam).

11. On March 4, 2022, the Florida House passed the Redistricting Committee's bill with C8019 as the primary map, and C8015 as the secondary map to be enacted if the primary map was found to be invalid by any court. Later that same day, the Florida Senate adopted the House legislation establishing C8019 as the primary congressional map and C8015 as the fallback if the primary map were to be invalidated.

12. On March 29, 2022, Governor DeSantis vetoed the Legislature's two-map redistricting plan. A memorandum dated March 29, 2022 from the Governor's General Counsel, Ryan Newman, accompanied the veto proclamation. *Memorandum re: Constitutionality of CS/SB 102, An Act Relating to Establishing*

*the Congressional Districts of the State* (Mar. 29, 2022).  Governor DeSantis called a special legislative session to address redistricting on April 19–22, 2022.

13. In a Memorandum issued on April 11, 2022, Florida House Speaker Chris Sprowls and Senate President Wilton Simpson announced that the Legislature would not produce a map of its own during the special session and would instead wait to hear from the Governor's Office about a map that he would support.  *See Memorandum re: Redistricting Update* (Apr. 11, 2022), available at https://tinyurl.com/5b9mpukc.

14. On April 13, 2022, congressional redistricting plan P000C0109 was released.  This is the plan that would eventually be enacted into law (the "Enacted Plan").

15. On April 19, 2022, J. Alex Kelly testified before the Senate Committee on Reapportionment and the House Congressional Redistricting Committee regarding plan C0109.

16. The Legislature passed Governor DeSantis's proposed map without amendments on April 21, 2022.

17. Under the Enacted Plan, the voters in Benchmark CD-5 are now divided among Enacted CD-2, Enacted CD-3, Enacted CD-4, and Enacted CD-5.

### III. Concise Statement of Issues of Law Where There is Agreement

Issues of law on which there is agreement are as follows:

1. This three-judge court has jurisdiction over the Plaintiffs' claims under 28 U.S.C §§ 1331, 1343, 2201, 2202, 2284(a), and 42 U.S.C. § 1983.

2. The relevant legal standard for evaluating the Plaintiffs' Fourteenth and Fifteenth Amendment intentional discrimination claims is the standard from *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), with the additional factors added by the 11th Circuit in *Greater Birmingham Ministries v. Secretary of State for State of Alabama*, 992 F.3d 1299 (11th Cir. 2021).

### IV. Concise Statement of Issues of Fact That Remain to be Litigated

The sole issue of fact that remains to be litigated is whether or not the record of this case, as set forth herein and as developed at trial, demonstrate that intentional discrimination on the basis of race was the reason, at least in part, for the elimination of Benchmark CD-5 and the failure to replace it with a Black-performing district in North Florida.

### V. Concise Statement of Issues of Law That Remain to be Litigated

Issues of law that remain to be litigated are as follows:

    1.    Whether the Fourteenth and Fifteenth Amendments are violated in this case.

    2.    Whether Plaintiffs have standing to challenge and remedy the elimination of Benchmark CD-5 in the Enacted Plan.

## VI. Concise Statement of Agreement as to the Application of the Federal Rules of Evidence or the Federal Rules of Civil Procedure

Currently, there is no disagreement between the parties as to the application of the Federal Rules of Evidence or the Federal Rules of Civil Procedure.

## VII. Parties Views on Expert Testimony

The parties agree that expert testimony should come in entirely through live testimony. As noted above, the parties believe that they will be able to present their cases well within the 8 days reserved for this trial.

## VIII. Additional Topics for an Orderly and Efficient Trial

The parties reserve the right to make additional deposition designations and counter-designations in the event that a potential witness who previously sat for a deposition in this matter is not called at trial for any reason.

Respectfully submitted,

| | |
|---|---|
| /s/ Alvin Li | Bradley R. McVay (FBN 79034)<br>Deputy Secretary of State |
| Gregory L. Diskant *(pro hac vice)* | Joseph S. Van de Bogart (FBN 84764) |
| H. Gregory Baker *(pro hac vice)* | General Counsel |
| Jonah M. Knobler *(pro hac vice)* | Ashley Davis (FBN 48032) |

| | |
|---|---|
| Catherine J. Djang *(pro hac vice)*<br>Alvin Li *(pro hac vice)*<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036<br>(212) 336-2000<br>gldiskant@pbwt.com<br>hbaker@pbwt.com<br>jknobler@pbwt.com<br>cdjang@pbwt.com<br>ali@pbwt.com<br><br>Katelin Kaiser *(pro hac vice)*<br>Christopher Shenton *(pro hac vice)*<br>SOUTHERN COALITION FOR SOCIAL JUSTICE<br>1415 West Highway 54, Suite 101<br>Durham, NC 27707<br>(919) 323-3380<br>katelin@scsj.org<br>chrisshenton@scsj.org<br><br>Janette Louard *(pro hac vice forthcoming)*<br>Anthony P. Ashton *(pro hac vice forthcoming)*<br>Anna Kathryn Barnes *(pro hac vice forthcoming)*<br>NAACP OFFICE OF THE GENERAL COUNSEL<br>4805 Mount Hope Drive<br>Baltimore, MD 21215<br>Telephone: (410) 580-5777<br>jlouard@naacpnet.org<br>aashton@naacpnet.org<br>abarnes@naacpnet.org | Chief Deputy General Counsel<br>FLORIDA DEPARTMENT OF STATE<br>R.A. Gray Building<br>500 S. Bronough Street<br>Tallahassee, Florida 32399<br>Brad.mcvay@dos.myflorida.com<br>Joseph.vandebogart@dos.myflorida.com<br>Ashley.davis@dos.myflorida.com<br>Telephone: (850) 245-6536<br><br>/s/ Michael Beato<br>Mohammad O. Jazil (FBN 72556)<br>Gary V. Perko (FBN 855898)<br>Michael Beato (FBN 1017715)<br>HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK<br>119 S. Monroe Street, Suite 500<br>Tallahassee, Florida 32301<br>mjazil@holtzmanvogel.com<br>gperko@holtzmanvogel.com<br>mbeato@holtzmanvogel.com<br>Telephone: (850) 274-1690<br><br>Jason Torchinsky (Va. BN 478481)<br>(D.C. BN 976033)<br>HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK<br>2300 N Street NW, Suite 643A<br>Washington, D.C. 20037<br>jtorchinsky@holtzmanvogel.com<br>Telephone: (202) 737-8808<br><br>Taylor A.R. Meehan (IL BN 6343481)<br>(Va. BN 97358)<br>Cameron T. Norris (TN BN 33467) (Va. BN 91624)*<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Boulevard, Suite 700<br>Arlington, VA 22209 |

Henry M. Coxe III (FBN 0155193)
Michael E. Lockamy (FBN 69626)
BEDELL, DITTMAR, DeVAULT, PILLANS &
 COXE
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
(904) 353-0211
hmc@bedellfirm.com
mel@bedellfirm.com

*Attorneys for Plaintiffs*

taylor@consovoymccarthy.com
cam@consovoymccarthy.com
Telephone: (703) 243-9423

*Counsel for Secretary Byrd*

*Admitted *Pro hac vice*

## **CERTIFICATE OF SERVICE**

I certify that on September 5, 2023, the foregoing was filed through the Court's CM/ECF, which will serve a copy to all counsel of record.

/s/ Alvin Li
Alvin Li